UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

NORTHERN DIVISION

| | | |
|---|---|---|
| JASON CAP, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>CARMAX, INC., et al.,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-03602-JKB<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

4897-1537-2421.v1

## I.    INTRODUCTION

Pending before the Court is a securities class action lawsuit on behalf of purchasers or acquirers of CarMax, Inc. ("CarMax" or the "Company") publicly traded securities between June 20, 2025 and November 5, 2025, inclusive (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 ("Exchange Act") against the Company and certain of its executive officers.  The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to "appoint the most adequate plaintiff as lead plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The most adequate plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).[1]

Here, the Pension Funds should be appointed lead plaintiff because they filed a timely motion, have a significant financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Funds' selection of Robbins Geller Rudman & Dowd LLP to serve as lead counsel should be approved because the Firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members.

---

[1]    The complaint filed in this action (filed on November 3, 2025 and amended on November 7, 2025) is substantially similar to the complaint that is pending before Judge Roderick C. Young in the U.S. District Court for the Eastern District of Virginia. *See Ind. Pub. Ret. Sys. v. CarMax, Inc.*, No. 3:25-cv-01056, ECF 1 (E.D. Va. Dec. 23, 2025), attached as Exhibit A to the Declaration of William N. Sinclair in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Sinclair Decl.").  These related actions are brought against overlapping defendants and allege the same violations of the Exchange Act during the same Class Period.  If appointed lead plaintiff, Excavators Union Local 731 Pension Fund and City of Birmingham Retirement and Relief System (the "Pension Funds") intend to proceed with all related actions in a single jurisdiction.

4897-1537-2421.v1

## II.     STATEMENT OF FACTS

CarMax, through its subsidiaries, operates as a retailer of used vehicles and related products. CarMax stock trades on the New York Stock Exchange under the symbol KMX.

The complaint (as amended on November 7, 2025) alleges that defendants throughout the Class Period recklessly overstated CarMax's growth prospects when, in reality, its earlier growth in the 2026 fiscal year was a temporary benefit from customers buying cars due to speculation regarding tariffs. *See* ECF 5 at ¶22.

On September 25, 2025, CarMax reported second quarter fiscal year 2026 results, revealing among other things that retail unit sales decreased 5.4%, comparable store unit sales decreased 6.3%, and that net earnings per diluted share were $0.64 versus $0.85 a year ago. *Id.* at ¶23. On this news, the price of CarMax shares fell more than 20%. *Id.* at ¶26.

Then, on November 6, 2025, CarMax disclosed that "[o]n November 4, 2025, the Board of Directors of the Company . . . terminated the employment of William D. Nash, the Company's President and Chief Executive Officer, effective December 1, 2025." *Id.* at ¶27. Also that day, *The Wall Street Journal* published an article entitled "CarMax Cuts Ties With CEO, Expects Weak Third Quarter," reporting that the Company terminated defendant Nash and "said it expects its used car sales to plunge in the current third quarter." *Id.* at ¶29. On this news, the price of CarMax shares fell more than 24%. *Id.* at ¶30.

As a result of defendants' alleged wrongful acts and omissions and the decline in the value of the Company's securities, class members have suffered significant losses and damages.

4897-1537-2421.v1

## III.   ARGUMENT

### A.   The Pension Funds Are the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff."  15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice of the action was published on *Business Wire* on November 3, 2025.  *See* Sinclair Decl., Ex. B.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Pension Funds meet these requirements and should be appointed Lead Plaintiff.

### 1.   The Pension Funds' Motion Is Timely

The November 3, 2025 statutory notice advised putative class members of the pendency of the action, a summary of the core allegations and the claims asserted, and the right to move the Court

for appointment as lead plaintiff by January 2, 2026. *See* Sinclair Decl., Ex. B; 15 U.S.C. §78u-4(a)(3)(A). Because this motion is being timely filed by the statutory deadline, the Pension Funds are eligible for appointment as lead plaintiff.

### 2. The Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class

As evidenced by their Certifications and loss chart, the Pension Funds suffered more than $900,000 in losses on their purchases of CarMax securities during the Class Period as a result of defendants' alleged misconduct. *See* Sinclair Decl., Exs. C, D. To the best of their counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the Pension Funds meet the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Funds Are Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this stage of the litigation, courts focus on the typicality and adequacy requirements. *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 658 (E.D. Va. 2016). Only a prima facie showing of typicality and adequacy is required. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md.). "The requirement of typicality is satisfied if the movant's claim arises from the same course of events as those of the other potential class members and relies on similar legal theories to prove the defendants' liability." *Id*. "Adequacy depends on whether the movant 'has the ability to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class.'" *Id.* (citation omitted).

4897-1537-2421.v1

Like all putative class members, the Pension Funds purchased CarMax securities during the Class Period and suffered harm as a result of defendants' alleged misconduct. As such, the Pension Funds suffered the same injuries as the other putative class members as a result of the same alleged conduct by defendants and has claims based on the same legal issues.

The Pension Funds are also adequate because their interests in the action are squarely aligned with the interests of the other members of the class. As evidenced by their sworn Certifications and Joint Declaration, the Pension Funds are highly incentivized to maximize the recovery for all putative class members harmed by defendants' alleged misrepresentations based on, among other things, the substantial losses the Pension Funds suffered. *See* Sinclair Decl., Exs. C, E. Moreover, as institutional investors, the Pension Funds are precisely the type of investors whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA. *See generally In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members."); *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("'In enacting the PSLRA, Congress expressed an intention to encourage institutional investors to step forward and assume the role of lead plaintiff in an effort to prevent lawyer-driven litigation.'. . . Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff."). Indeed, the Pension Funds are sophisticated fiduciaries, collectively managing more than one billion dollars on behalf of thousands of fund participants and their beneficiaries. As demonstrated in their Joint Declaration, the Pension Funds have extensive experience serving as representative parties in securities class actions and have

- 5 -

4897-1537-2421.v1

established their ability and willingness to vigorously prosecute this action together. *See* Sinclair Decl., Ex. E. Because the Pension Funds filed a timely motion, have a large financial interest in the relief sought by the class, and demonstrated their typicality and adequacy, the Court should adopt the presumption that the Pension Funds are the "most adequate plaintiff."

Because the Pension Funds filed a timely motion, have a significant financial interest in the relief sought by the class, and demonstrated their typicality and adequacy, the Court should adopt the presumption that they are the "most adequate plaintiff."

## B.     The Court Should Approve the Pension Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Here, the Pension Funds have selected Robbins Geller to serve as lead counsel for the proposed class.

Robbins Geller, a 200-attorney nationwide law firm, regularly practices complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388 (D. Md.) (Robbins Geller as lead counsel obtained an historic $434 million recovery from Under Armour, representing the second largest securities class action recovery ever in the Fourth Circuit); *Knurr*, 220 F. Supp. 3d at 663 ("There is no question that Robbins Geller is qualified to litigate this class action lawsuit – it has a long record of success in these types of cases."); *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH, ECF 1316 at 55 (S.D.N.Y. Jan. 21, 2020) (Hellerstein, J.) (Concerning Robbins Geller's role as sole lead counsel in

- 6 -

recovering $1.025 billion for the class in a securities case, stating "the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous.").

Robbins Geller has also obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits, as well as a 2019 PSLRA class action trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.[2]

Thus, the Court can be assured that by approving the Pension Funds' choice of Robbins Geller as lead counsel, the putative class will receive the highest caliber of representation.

---

[2]    *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

4897-1537-2421.v1

## IV.   CONCLUSION

The Pension Funds have satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  Accordingly, the Pension Funds respectfully request that the Court appoint them as Lead Plaintiff and approve their selection of Lead Counsel.

DATED:  January 2, 2026

Respectfully submitted,

SILVERMAN THOMPSON SLUTKIN
   & WHITE LLC
STEVEN D. SILVERMAN (VSB No. 22887)
ANDREW C. WHITE (VSB No.  08821)
WILLIAM N. SINCLAIR (VSB No. 28833)


                    s/ William N. Sinclair
               WILLIAM N. SINCLAIR

400 E. Pratt Street, Suite 900
Baltimore, MD  21201
Telephone:  410/385-2225
410/547-2432 (fax)
ssilverman@mdattorney.com
awhite@mdattorney.com
bsinclair@mdattorney.com

Local Counsel

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

- 8 -

LERNER LAW FIRM & ASSOCIATES
EVAN D. LERNER
400 Post Avenue, Suite 303
Westbury, NY 11590
Telephone:  516/307-1550
516/307-1551 (fax)
elerner@lernerlawfirm.com

Additional Counsel

4897-1537-2421.v1